## STERRY CLARKE *v.* WELCOME FARNUM.

## SAME *v.* HENRY M. HOLBROOK.

Railroad iron, to the value of upwards of sixty thousand dollars, was purchased by S. for the use of a railroad company, with their note, secured by their mortgage bonds for thirty thousand dollars and the personal guaranty of eight of the friends of the road, including S., to the amount of five thousand dollars each, and was by S. loaned to the company to be laid down and used on their track; the title of the company to the iron to become complete when they had paid for the same; and in default of payment, S. to have the right to take up the iron from the track of the road, and hold the same for the indemnity, amongst other things, of the guarantors. Under this contract, S. delivered the iron to the railroad company, and it was laid down on their railroad track in the commonwealth of Massachusetts. Upon garnishee process served here upon S. by the creditors of two of the guarantors, for the purpose of attaching the iron as in his hands, for their use, *it was held*, notwithstanding the company was in default to the injury of the defendants, that S. was not chargeable as garnishee for the iron, because it was not in his possession, and because the defendants had no attachable interest in it.

THESE were actions of assumpsit, brought to recover the amount of several promissory notes due from the defendants to the plaintiffs; the writs being served solely by garnishee process upon Horatio N. Slater, for the purpose of attaching the property of the defendants in his hands and possession. The question was, whether the garnishee was chargeable, under the following facts disclosed by his affidavits :—

On or about the 16th day of September, 1854, the garnishee received of the Boston and New York Central Railroad Company their promissory note of that date for the sum of sixty thousand four hundred and forty-five dollars, together with thirty of their mortgage bonds for one thousand dollars each, for the purpose of furnishing said company with iron rails for the use of their road ;

and having purchased said iron of the Bay State Iron Company, upon the terms mentioned in the following sealed agreement, on the 18th day of September, 1854, entered into the same with the parties named therein, two of whom were the defendants in the above suits :—

"Whereas, I have this day purchased of the Bay State Iron Company ten hundred and fifty-three tons of iron, paying therefor with the note of the Boston and New York Central Railroad Company, secured by thirty of their mortgage bonds, and also secured to the amount of forty thousand dollars by the personal guaranty of myself, Welcome Farnum, Timothy Farrar, Hamilton Willis, E. D. Ammidown, J. W. Clark, Warren Hunt and H. M. Holbrook, each for five thousand dollars ; and, whereas, the said Boston and New York Central Railroad Company have promised to pay to me five thousand dollars per month, after the first day of March, 1855, out of the receipts of their said railroad, which sum, if received by me, I intend to apply to their said note given to me, and by me sold to the Bay State Iron Company,—the said five thousand dollars to be applied, in part, to reducing the guaranty of the above named persons ; now, therefore, I hereby agree with the said guarantors, that I will hold the said iron to indemnify them for all their liability as said guarantors ; it being understood, however, that in consideration of the pledge of their receipts to me, I may either both loan or sell said iron to said company, to be used by them upon their said road."

Subsequently, the railroad iron thus purchased by the garnishee was by him delivered to the Boston and New York Central Railroad Co., under the following written agreement made with them, and was by them laid down and affixed to the track of their road, where it has remained thus affixed ever since, without any step taken by the garnishee to take up or remove the same :—

"Memorandum of an agreement made and entered into this 23d day of September, A. D. 1854, by and between H. N. Slater, of Providence, in the State of Rhode Island, and the Boston and New York Central Railroad Company, by J. C. Hurd, their

agent, thereunto specially authorized, *Witnesseth :*—The said Slater agrees to lease, and by these presents doth lease, to the said company, ten hundred and fifty-three tons of railroad iron, compound rail, to be laid down and used by said company on their railroad. The said company agree to pay to said Slater, for the use of said iron, five thousand dollars per month, the first payment to be made on the first day of March, A. D. 1855, and so on, upon the first day of each succeeding month, until they shall have paid to him sixty-eight thousand four hundred and forty-five dollars, and interest on the same from the 16th day of September, A. D. 1854. The said company hereby assign and set over to the said Slater the proceeds of their railroad, to the amount of sixty-eight thousand four hundred and forty-five dollars, and interest on the same from the 16th day of September, A. D. 1854, and authorize and require their superintendent to retain in his own hands, out of the proceeds of said railroad, a sufficient sum of money to pay the said amount to said Slater, at the said times; and they hereby authorize and require their said superintendent to pay to the said Slater, out of the said sum so retained by him, five thousand dollars on the first day of March, A. D. 1855, and the same sum on the first day of each succeeding month, till he shall have paid the said sum of sixty-eight thousand four hundred and forty-five dollars, with interest on the same from the said 16th day of September, A. D. 1854. If there shall be any default of said payments to said Slater, then said company hereby authorize the said Slater to take up and remove the said iron leased by him to them, though the same be put down and used upon their railroad. If there shall be no default of said payments, the said Slater agrees, when the said sixty-eight thousand four hundred and forty-five dollars shall have been paid to him as aforesaid, that he will sell and deliver to said company the said iron leased by him as aforesaid, giving them a receipt in full of all demands, for the use of said iron, and a release of all his interest in and to the same, without further consideration."

The note given by the garnishee to the Bay State Iron Company for the iron, for $60,445, was payable in monthly installments of $5000 each. The time for the payment of the same has

elapsed, and the railroad company have never paid said note, nor furnished the garnishee with anything from the proceeds or receipts of their road under their agreement, or from any other source, to be applied to the payment of said note or to the indemnification of said guarantors. The garnishee swore, further, that he had been informed that Welcome Farnum had paid, or procured to be paid, the amount of his guaranty on said note, but did not *know* whether he had done so or not; that he had never been notified by said Farnum, or by any one on his behalf, that he should look to said iron for his indemnity, or been requested to apply said iron to that purpose; that said Farnum had, within some two or three or more years, received the benefit of the insolvent laws of Massachusetts, and as incident to receiving the same, had made an assignment of all his property for the benefit of his creditors, embracing, as the garnishee supposed, all the interest or property which Farnum had in said iron, if any he had which could pass by assignment; and that this assignment came to the knowledge of the garnishee prior to the service of the writ upon him, in the suit against said Farnum; and that in addition, the said Farnum was then indebted to the garnishee in the sum of fifteen or twenty thousand dollars. The garnishee further swore, that some of the sums guarantied by said guarantors still remained either wholly or in part unpaid,—the guarantors having become insolvent; and that he had been informed that the guaranty of another of said guarantors was paid, if paid at all, not by himself, but by his friends.

In the suit against Holbrook, who, as above stated, was one of the said guarantors, the affidavit of the garnishee further set forth, that an agreement was made with the Bay State Iron Company by two of Holbrook's friends, to pay the amount due from him under his guaranty, but that the garnishee had not been informed whether said agreement had been carried out or not; but that he had never been notified by said Holbrook, or by any one on his behalf, that said Holbrook looked to said iron for his indemnity, nor had he been requested to apply said iron to such purpose.

*James Tillinghast, for the attaching creditors :*—

I. The words of our statute concerning foreign attachment are

more inclusive than those of the statute of Massachusetts, (Rev. St. Ch. 183, § 3,) and the railroad iron was in the garnishee's possession, in the sense of our statute. *Ward* v. *Lamson and trustee*, 6 Pick. 358; *Arnold* v. *Elwell and trustee*, 13 Maine, 261; *Lane* v. *Newell and others and trustee*, 15 Ib. 86.

II. The garnishee was bound to know whether Holbrook's guaranty was paid by him through his friends, to the Bay State Iron Company, and his affidavit must therefore be construed to state that it was so paid. *Sebor* v. *Armstrong*, 4 Mass. 206; *Graves* v. *Walker*, 21 Pick. 160; *Ormsbee* v. *Davis & Co.*, 5 R. I. Rep. 442.

III. The assignees of Farnum, in Massachusetts, have not claimed, as it appears, this property, and it is still in the possession of Slater.

IV. The garnishee cannot set off his debt of fifteen or twenty thousand dollars, due to him from Farnum, against this railroad iron, since it is not a debt, but goods upon which the garnishee has no specific lien.

*Durfee, for the garnishee :—*

I. This railroad iron is not property in the hands of Slater, who has put it into the possession of the Boston and New York Central Railroad Company, under a contract which gives them a qualified interest in it; so that the union is complete in them, of possession and interest. He has reserved a mere power over it, liable to be defeated at any moment, upon tender by the railroad company of the amount due to the guarantors, with interest.

II. The railroad iron affixed to the road of the company, under the license of Slater, is not personal property, and cannot be attached in this mode. *Providence and Worcester Railroad Co.* v. *Wright*, 2 R. I. Rep. 459.

III. But if this be personal property, the railroad company possess it, not as the agent of Slater, but under their contract,— call it lease or sale; and the power of the garnishee to enter upon the road, and take possession of the iron, is like that of a mortgagee to take possession of the mortgaged property, and to sell it for the satisfaction of his mortgage. Parsons compares such a contract as this to a mortgage. Parsons on Contracts, 610.

IV. By the 9th and 10th sections of Ch. 183 of the Revised

Statutes, the garnishee has the right to surrender the property in his hands in his own relief; and the power to charge him, and his power thus to discharge himself, are commensurate rights. Now, the interest, if any, of the defendants in this railroad iron is in an unascertained portion of rails laid down on a railroad in Massachusetts; and the delivery must be to the officer here. There are eight guarantors; part of whom have paid and part not, and none have any rights in the iron except for their indemnity. If you take it up you destroy its value in great part, and how can you divide it amongst the guarantors?

V. The property is attachable in Massachusetts by the creditors of the defendants, if at all, and so cannot be delivered up by the garnishee.

VI. The defendants have no attachable interest in the iron, but a mere lien or equity, under the garnishee's power, considered as a trust for them; and the railroad company who furnished their note and thirty of their mortgage bonds to the garnishee, to secure the payment for these rails, would be entitled to have their interests represented in any proceeding by the guarantors against the garnishee to enforce the execution of this trust. The garnishee is not liable to the guarantors at law, and so cannot be in this proceeding, to their creditors. Drake on Attachment, § 457.

VII. As to the attachment in the suit against Farnum, he has assigned all his interest, if any, in the iron, and it is in his assignee. Ib. §, 526.

VIII. As to the attachment in the suit against Holbrook, it does not appear that he has ever paid his guaranty. Ib. § 549.

IX. The garnishee, notwithstanding his power, reserved in the contract with the railroad company, has no right to take up these rails, to the destruction of the public interest, by breaking up a public highway after it has been once opened, and travel, contracts, and interests have been adjusted, made, and grown up, upon the faith that the road shall be kept open. If he should attempt it, he would undoubtedly be enjoined; and *hence* cannot be chargeable by this process.

AMES, C. J.   There are two fatal objections to these attachments; one, that the garnishee has no possession of, and the other, that the defendants have no attachable interest in, the property

attached.   The purpose of the arrangement set forth in the gar-
nishee's affidavit was, to supply the Boston and New York Cen-
tral Railroad Company, which lacked credit, with iron for the
use of their road; and this purpose not only suggests the legal
relation of the several parties to the arrangement, but the con-
struction to be put upon the contracts entered into to carry it out.

The garnishee, who acted as the agent and trustee for all
parties, purchased the iron of the Bay State Iron Company, pay-
ing for it with the note of the Boston and New York Central
Railroad Company, secured for about one-half of the amount by
thirty of its mortgage bonds, which, together with the note,
were delivered to him by the railroad company for that purpose,
and secured, for the other half, by the personal guaranty of eight
of the friends of the road, for five thousand dollars each; three
of the guarantors being the garnishee himself and the two defen-
dants.   Instead of delivering the iron in full property to the
railroad company, he loaned the same to them to be laid down
and used on their railroad, the loan to become a sale if the com-
pany paid for the iron as stipulated; and he reserved to himself,
in default of such payment, the power to take up and repossess
himself of the iron, for the purpose, amongst other things, of
indemnifying the guarantors.

The railroad company, with whose note and for whose use the
iron was bought, and to whom it had been delivered under the
above arrangement, was in possession of the iron which had been
laid down on their track, at the time these writs were served on
the garnishee; and although the company was in default, all that
the garnishee held for the benefit of the defendants, was a power,
in the nature of a trust, to take up and repossess himself of the
iron rails, for their indemnity as guarantors.   Subject to this
power, the company had, so far as the guarantors were concerned,
not only the possession and use, but the whole beneficial interest
in the rails, and could, at any time, defeat the garnishee's power
to take up the rails, at the instance of the guarantors, by giving
them indemnity.   The railroad company did not possess these
rails as the agent of the garnishee, nor, in equity, as his mere
lessee; but as the owner of the same, pledged to the garnishee
for his own indemnity and that of the guarantors.   In no proper

sense can the possession of the company be said to be his ; since it is protected by their own rights, by virtue of which they can, at any moment, abrogate his power to disturb them, and complete their title to the property purchased for them, and possessed by them. The garnishee is no more in possession of the property sought to be attached in these cases, than every mortgagee in trust of personal property is, after the mortgage has been forfeited, and before he has taken possession for sale. Such mortgagee has the legal title and the right to possession ; but whoever supposed that he was in possession of the mortgaged property under such a defeasible title, so that he could be compelled, by garnishee process, to surrender, or account for it, at the suit of a creditor of his *cestui que trust ?*

This view of the relative rights of the parties to the property in question shows, too, that the defendants have no attachable interest in it. Their right is a mere equity, to compel the enforcement of a power over it, in trust for their benefit. It is a right to nothing tangible, for indemnity only, and is defeasible, so far as the property is concerned, at the will of the railroad company.

Without regarding the difficulties which have been suggested in any attempt to break up a railroad by stripping it of its iron, after it had begun to run, and the hardship of compelling a garnishee to surrender or account for property thus placed by contract in another state, and beyond his probable control, we are, for these reasons, of the opinion, that the garnishee is not chargeable, and direct these attachment suits to be dismissed, for want of service of the writs.